IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

SULEIMAN MOHAMED MASOUD,[1]        :

    Petitioner,                                    :

vs.                                                            :             07-0008-BH-C

ALBERTO GONZALES, etc., et al.,           :

    Respondents.

**REPORT AND RECOMMENDATION**

Suleiman Mohamed Masoud, a native and citizen of Tanzania ordered removed from the United States and presently being detained by the Immigration and Customs Enforcement ("ICE") arm of the United States Department of Homeland Security, has petitioned this Court for habeas relief pursuant to 28 U.S.C. § 2241.[2] This matter has been referred to the

---

[1] While petitioner, in the style of the petition he filed in this Court on January 3, 2007, spelled his surname "Mosoud," in all pertinent ICE documents his surname is spelled "Masoud" and petitioner has signed his name as "Masoud" on documentation submitted administratively and to the various courts in which he has filed pleadings. (*See, e.g.,* Doc. 1, at 13 (habeas petition signed "Masoud"))

[2] Petitioner is in the actual and present physical custody of David O. Streiff, Warden of the Perry County Correctional Center in Uniontown, Alabama. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447, 124 S.Ct. 2711, 2724, 159 L.Ed.2d 513 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement.").

undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c). It is recommended that the instant petition be dismissed, without prejudice to being filed at a later date, because Masoud prematurely filed the present attack upon his post-removal-period detention.

## FINDINGS OF FACT

1.  Masoud is a native and citizen of Tanzania who initially entered the United States on September 19, 1988 without being inspected by an immigration officer. (Doc. 11, Exhibit B)

2.  On September 30, 2002, an Immigration Judge ordered petitioner removed from the United States and deported to his native Tanzania. (*Id.*)[3] On November 15, 2005, the Board of Immigration Appeals ("BIA") upheld the decision of the immigration judge. (Doc. 11, Exhibit B; *see* Doc. 1, at 1 (BIA affirmed the IJ's decision and denied his motion to reopen))[4]

3.  Petitioner has pending in the Second Circuit Court of Appeals

---

[3] According to petitioner, the hearing before the immigration judge was conducted in his absence. (*See* Doc. 1, at 1)

[4] Petitioner avers in his complaint that he has been in the custody of ICE since June 22, 2004. (Doc. 1, at 4; *see also id.* at 9 ("On or about June 22, 2004 Petitioner was apprehended and has been deported to U.S. (DHS-ICE) under the reciprocal agreement after living in Canada."))

a petition for review; a stay of removal is in effect. (Doc. 11, Exhibit B)

  4. Masoud filed his petition seeking habeas corpus relief, pursuant to 28 U.S.C. § 2241, in this Court on January 3, 2007. (Doc. 1) In his petition Masoud seeks his immediate release from detention on the basis that his prolonged detention is unconstitutional in light of *Zadvydas, infra* (Doc. 1, at 3 & 11-13); however, in reply to the federal respondents' answer petitioner, though still citing to *Zadvydas*, claims his petition "is filed pursuant to 8 U.S.C. § 1226(a) (c) INA § 236(a) which governs pre-removal detention." (Doc. 12, at 1; *see also id*. at 2-16)

## CONCLUSIONS OF LAW

  1. In *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S.Ct. 2491, 2498, 150 L.Ed.2d 653 (2001), the Supreme Court determined that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."

  2. The Supreme Court held in *Zadvydas* that the post-removal-period detention statute, 8 U.S.C. § 1231, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689, 121 S.Ct. at

2498.

3. 8 U.S.C. § 1231 reads, in relevant part, as follows:

**(a) Detention, release, and removal of aliens ordered removed**

**(1) Removal period**

**(A) In general**

Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

**(B) Beginning of period**

The removal period begins on the **latest** of the following:

**(i)** The date the order of removal becomes administratively final.

**(ii)** If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

**(iii)** If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

**(C) Suspension of period**

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.
>
> **(2)    Detention**
>
> During the removal period, the Attorney General shall detain the alien. Under no circumstances during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

*Id*. (emphasis supplied). The Supreme Court in *Zadvydas* concluded that six months represents a presumptively reasonable period of time to detain a removable alien awaiting deportation pursuant to the provisions of this statute. 533 U.S. at 701, 121 S.Ct. at 2505 ("While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no

significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."); *see Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter.").

    4.    In *Akinwale*, the Eleventh Circuit determined that the six-month detention period recognized by the Supreme Court "must have expired" at the time a petitioner's § 2241 petition is filed "in order to state a claim under *Zadvydas*." 287 F.3d at 1052; *see also id.* ("[I]n order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."). The *Akinwale* court also indicated that the running of the six-month

detention period can be interrupted or tolled by the alien moving for a stay of deportation/removal and any subsequent action of the appropriate circuit court in granting such motion. *See id*., n.4 ("Akinwale was taken into custody on November 17, 1999, and interrupted the running of time under *Zadvydas* by moving on December 3, 1999, for a stay of deportation in his prior appeal to this Court. The stay was granted on January 10, 2000. . . . Akinwale subsequently filed the § 2241 petition in this case on March 21, 2000. Thus, Akinwale, unlike the aliens in *Zadvydas*, chose to simultaneously challenge issues related to his removal order and his post-removal period detention. . . . Therefore, Akinwale did not have even an unencumbered month of detention prior to filing his § 2241 petition, let alone the requisite six months.").

   5. In this case, Masoud has filed his § 2241 petition prematurely. Petitioner's filing date in this instant action, January 3, 2007 (Doc. 1), came several months after the Second Circuit Court of Appeals granted his stay of removal pending determination of the petition for review. In accordance with *Zadvydas, Akinwale* and the removal statute, 8 U.S.C. § 1231, Masoud has had no period of detention prior to the filing of his § 2241 petition that can be counted toward the six-month post-removal-period detention recognized as

presumptively reasonable by the Supreme Court.[5] In other words, the six-month period has not yet begun, much less expired; thus, petitioner has not stated a claim for relief under 28 U.S.C. § 2241 and *Zadvydas*.[6]

## CONCLUSION

For these reasons, the undersigned recommends that this Court dismiss, without prejudice, Suleiman Masoud's habeas corpus petition filed pursuant to 28 U.S.C. § 2241. Masoud's petition has been prematurely filed under 8 U.S.C. § 1231. The dismissal is without prejudice to petitioner's ability to file a new § 2241 petition in the future when he is able to state a claim under *Zadvydas*.

The attached sheet contains important information regarding objections

---

[5] In *De La Teja v. United States*, 321 F.3d 1357, 1363 (2003), the Eleventh Circuit held that once a final removal order has been entered, an alien, initially detained pursuant to 8 U.S.C. § 1226(c)--governing detention prior to a final removal order--becomes detained pursuant to 8 U.S.C. § 1231(a), "which controls the detention and removal of an alien subject to a final order of removal." It is clear in this case that Masoud has been the subject of a final order of removal since November 18, 2005. *See* 8 C.F.R. § 1241.1(a) (2006) ("An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final: (a) Upon dismissal of an appeal by the Board of Immigration Appeals[.]"). Therefore, petitioner is being detained pursuant to INA § 241(a), 8 U.S.C. § 1231(a); in accordance with *De La Teja, supra*, he is not being detained under INA § 236, 8 U.S.C. §1226. The pre-removal detention statute has no application in this case.

[6] The removal period for this petitioner will not begin until the Second Circuit Court of Appeals enters its final order.

to the report and recommendation of the Magistrate Judge.

**DONE** this the 7th day of May, 2007.

       s/WILLIAM E. CASSADY
       **UNITED STATES MAGISTRATE JUDGE**

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                                                s/WILLIAM E. CASSADY
                                                                UNITED STATES MAGISTRATE JUDGE